# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **FIREMAN'S FUND INSURANCE COMPANY,** | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) **CIVIL ACTION**<br>)<br>) **Case No. 08-2551-CM** |
| **CRST VAN EXPEDITED, INC.,** | )<br>) |
| Defendant. | )<br>) |

## MEMORANDUM AND ORDER

Plaintiff Fireman's Fund Insurance Company ("Fireman's Fund") brings this case in an attempt to recover money for freight lost in interstate transportation. Fireman's Fund was the insurer of a truckload of cellular phone handsets valued at nearly $4.3 million. Former defendant Sprint Nextel Corporation ("Sprint") bought the handsets from UTStarcom, Fireman's Fund's insured, who is not a party to this case. Sprint had a transportation agreement with former defendant AFC Worldwide Express, Inc. ("AFC"). AFC subcontracted with defendant CRST Van Expedited, Inc. ("CRST") to transport and deliver the handsets to Sprint. But the handsets were stolen en route. Fireman's Fund has paid out on the insurance, and now seeks to recover damages from CRST based on breach of federal statutory duties, as well as other theories.

The case is before the court on Defendant CRST Van Expedited, Inc.'s Motion for Partial Summary Judgment Against Plaintiff (Doc. 135). CRST asks the court to limit its liability on a number of alternative bases. It argues that its liability is contractually limited to (1) $100,000 by bills of lading issued by UTStarcom that incorporated CRST's tariff; (2) $10,144 under AFC's bills of lading; (3) $250,000 pursuant to the contract between CRST and AFC; (4) or $184,012.16 pursuant to the contract between Sprint and AFC. CRST also asks the court to dismiss Fireman's

Fund's state law claims because they are preempted by the Carmack Act. And CRST states that attorney's fees are not recoverable under the Carmack Act. Finally, CRST contends that Fireman's Fund is not the real party in interest and lacks standing. Fireman's Fund, on the other hand, responds that: (1) CRST failed to give UTStarcom notice of its purported liability limitation; (2) CRST did not give UTStarcom the opportunity to choose a different liability rate; (3) UTStarcom did not agree to limit CRST's liability; (4) the documents CRST relies on are self-contradictory; and (5) the terms of the agreements are ambiguous and unenforceable.

## I. FACTUAL BACKGROUND[1]

CRST and AFC are motor truck cargo carriers. Although AFC and CRST do not have a written contract, CRST transports the goods of AFC's customers, and the two carriers agreed that CRST's liability would be limited to $250,000.

AFC and Sprint also have an agreement. AFC transports goods for Sprint. Their contract states that the maximum liability of AFC to Sprint for loss of or damage to a shipment due to negligence is $9.07 per pound in the absence of a higher declared value.

In April 2008, Sprint purchased cell phone handsets from UTStarcom. Sprint asked AFC to transport the handsets from California (where UTStarcom housed them) to Kentucky (where Sprint's warehouse was). AFC subcontracted with CRST to transport the handsets.

When CRST drivers stopped at a truck stop, the handsets were stolen. Fireman's Fund has since paid UTStarcom for its claim of loss on the handsets by a "loan receipt."

---

[1] The court construes the facts in the light most favorable to Fireman's Fund as the non-moving party pursuant to Fed. R. Civ. P. 56. The court has included only those facts which are relevant, material, and properly supported by the record. Fireman's Fund did not controvert any of CRST's proposed uncontroverted facts, and they are therefore deemed admitted for the purpose of summary judgment. D. Kan. R. 56.1(a).

AFC issued four bills of lading, or "waybills." A representative of UTStarcom signed each of them, but did not declare a value for the shipment. Each of AFC's waybills included a provision that the shipment was released to a value not to exceed $50 per shipment or $0.50 per pound unless a greater value was declared. Applied to this shipment, the liability limitation in AFC's waybills would be $10,144.

UTStarcom also issued four bills of lading. Again, the bills of lading contained a place for UTStarcom to declare a value, but its representative did not declare a value. The bills of lading stated that they were subject to "lawfully filed tariffs in effect on the date of issue." CRST's tariff limits liability to $100,000 unless CRST receives written notice of a higher market value.

CRST did not prepare or issue its own bill of lading.

## II. STANDARDS FOR JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

### A. Real Party in Interest/Standing

Although CRST raises its standing and real party in interest arguments at the end of its briefs, the court addresses them first. CRST treats the concepts as somewhat interchangeable. But although the term "standing" is used loosely in many contexts to denote the party with a right to bring a particular cause of action, technically "'standing pertains to suits brought by individuals or

-3-

groups challenging governmental action which has allegedly prejudiced their interests. On the other hand, the real party in interest question is raised in those much rarer instances between private parties where a plaintiff's interest is not easily discernible.'" *Fed. Deposit Ins. Corp. v. Bachman*, 894 F.2d 1233, 1235 (10th Cir. 1990) (citation omitted).

The court determines that the appropriate question here is whether Fireman's Fund is the real party in interest under Fed. R. Civ. P. 17. CRST claims that the real party in interest is the shipper—UTStarcom—not Fireman's Fund. UTStarcom received payment from Fireman's Fund via a "loan receipt." The loan receipt is repayable out of any recovery UTStarcom may make. But through the loan receipt, UTStarcom also appointed Fireman's Fund to collect any claim based on the handsets, and to "begin, prosecute, compromise or withdraw, in [UTStarcom's] name, but at the expense of [Fireman's Fund], any and all legal proceedings. . . ." (Doc. 136, Ex. P.) The fact that UTStarcom gave Fireman's Fund the right to bring legal proceedings *in its name* suggests that UTStarcom is the real party in interest.[2] On the other hand, Fireman's Fund certainly has the more genuine interest in prosecuting this case; UTStarcom has already been fully reimbursed for its losses. And the loan receipt also includes a provision that the receipt may be converted to a

---

[2] This is also consistent with a leading treatise:
Whether the insurer may sue in the name of its insured under a loan-receipt arrangement depends on whether the court is willing to accept the transaction at face value, either on the basis of its own evaluation of the transaction or in terms of state law in diversity cases. If the loan is treated as genuine, there is no basis for subrogation and the action may be brought in the insured's name. But, if the court views the loan as a sham and as actually constituting payment of the insured's claim, then the insurer is subrogated and must sue in its own name. When the loan-receipt arrangement is sanctioned by state law, however, the courts have accepted the characterization the parties have given to their transaction and have held the insured to be the real party in interest.
6A Charles Alan Wright et al., Federal Practice and Procedure § 1546 (3d ed.). In Kansas, a loan receipt is generally considered valid, but courts have looked at the specific facts before them. *See, e.g., Hiebert v. Millers' Mut. Ins. Ass'n of Ill.*, 510 P.2d 1203, 1208 (Kan. 1973).

subrogation receipt at any time. When an insurer is fully subrogated to the rights of its insured, the insurer owns the right of action against a wrongdoer. *J.C. Livestock Sales, Inc. v. Schoof*, 491 P.2d 560, 562 (Kan. 1971). To make this issue moot, all Fireman's Fund needs to do is mail UTStarcom a notice of the exercise of its option to convert the loan receipt into a subrogation receipt. Neither party has devoted much argument or analysis to this issue, however, and the court is not prepared to issue a ruling on it based on the arguments before it.

Even if Fireman's Fund is not the real party in interest, summary judgment for CRST is not the appropriate remedy. Fed. R. Civ. P. 17(a)(3) states:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Because dismissal is not a remedy, the court does not grant CRST summary judgment on this issue. It may be, however, that UTStarcom is the real party in interest because of the language in the loan receipt. The court does not make a determinative ruling at this time as to the proper party under Rule 17, but Fireman's Fund should be prepared to more fully explain why it is the real party in interest or to join or substitute UTStarcom if CRST raises the issue again.

**B. Limits on Liability**

CRST offers four documents which might operate to limit its liability. The parties focus their briefing efforts on the $100,000 limit, and give little attention to the other three options. Despite its brief treatment here of the issue, the court has spent considerable time reviewing the parties' arguments and the caselaw regarding this question. After much consideration, the court determines that it is not currently in a position to rule which liability limit, if any, applies.

The court recognizes that a determination of liability limits is an issue that should be capable

of being resolved on summary judgment. The briefs of the parties, however, are insufficiently focused on this issue to give the court a full opportunity to consider their positions. They seem to assume that if <u>any</u> of the limitations apply, the $100,000 limit will apply (although plaintiff contends that none of the limits apply). In other words, the parties focus more on <u>whether</u> the $100,000 limit applies than <u>which</u> limit applies (if any). The court is compelled to find that CRST has not met its burden of showing that it is entitled to summary judgment.

The court is aware that this case is set for a bench trial. The court will therefore ultimately be resolving these issues. While the court would like to avoid the necessity of bringing the parties in for a full trial, the court is not in a position to resolve the case on the briefs before it. Summary judgment is denied on the issue of which liability limit—if any—applies.

**C. State Law Claims and Attorney's Fees**

Fireman's Fund does not dispute that its state law claims are preempted by the Carmack Amendment. Fireman's Fund also does not dispute that attorney's fees are not recoverable under the Carmack Amendment. The court therefore grants CRST's motion on these issues.

**IT IS THEREFORE ORDERED** that Defendant CRST Van Expedited, Inc.'s Motion for Partial Summary Judgment Against Plaintiff (Doc. 135) is granted in part and denied in part.

Dated this 10th day of November 2010, at Kansas City, Kansas.

                                                        **s/ Carlos Murguia**
                                                        **CARLOS MURGUIA**
                                                        **United States District Judge**